WATERS vs. PETROVIC & BLANCHARD.

APPEAL FROM THE COURT OF THE TENTH DISTRICT, FOR THE PARISH

OF NATCHITOCHES, THE JUDGE THEREOF PRESIDING.

The last article (3521,) of the La. Code, which repeals all laws in every *case*, provided for in the Code, itself, applies not in every particular instance or cause, but to every *category* or *class of cases*, or *subject matter* upon which the Code contains express provisions, and abrogates all previous laws on these subjects.

The competency of witnesses is a distinct subject of legislative enactment. It is expressly and precisely treated of by the Code, (article 2260;) and it lays down all the great and leading principles of the law of evidence.

The article 2260 declaring who shall be a competent witness to prove any *covenant or fact*, whatever, in civil matters, makes no exception of any particular covenant or fact whenever parol evidence is admissible under the general provisions of the Code; and the act of 27th March, 1825, so far as it renders the maker of a note, &c., an *incompetent witness* in an action against the endorser, IS REPEALED by the last and repealing article of the Louisiana Code.

The repealing act of 1828, left in force the Louisiana Code, and also the law respecting the competency of witnesses; leaving the question still open, whether that competency as relates to makers of notes and drawers of bills, &c., was to be determined by the Code or act of 1825.

The general rules of evidence established by the Louisiana Code must be considered as applicable to all contracts whatever.

This court has held (in 5 La. Rep. 493,) that a part of the act of 1808, relative to proceedings upon prison bonds was still in force, notwithstanding the repealing act of 1828, and the Code of Practice.

A notary public, who is the son of one of the endorsers on a note, is not thereby rendered incompetent to make protest and give notice to all the parties.

A sheriff, who is the son of the plaintiff, in execution, is nevertheless competent to execute it.

So the grand-father of a legatee is a competent witness to a Will. The official act may be valid, and yet the public officer, be incompetent as a witness in any controversy growing out of the act.

This is an action by one endorser against his two previous endorsers, on a note for $3000, dated the 6th April, 1838, payable to the order of P. Petrovic, 24 months after date, and which was discounted in bank; protested for non-payment, and taken up by the plaintiff under protest. He now sues

and prays judgment against his two previous endorsers, as being liable to him.

The defendants admitted their signatures, but averred they endorsed the note in blank before its date, for the accommodation of the maker, T. W. Reed, and that it was only to be filled up for the sum of $1000. They then set up a special defence against the plaintiff; charging him with having received the note from Reed; divesting it from the original purpose and use intended; and of having it discounted for his own benefit and for a much larger sum. They released Reed, the maker of the note, and offerred him as a witness to prove their defence. He was objected to as incompetent to testify under the act of 1823, rendering makers of notes incompetent witnesses in suits against the endorsers. The protest of the note and certificate of notice was objected to as inadmissible in evidence, because the Parish Judge who made the protest, was the son of the plaintiff.

There was a verdict and final judgment for the plaintiff, from which the defendants appealed.

*Dunbar & Hyams*, for the plaintiff, maintained:

1. That the objection to the legality of the protest of the note sued on, because the Parish Judge who made it, was the son of the plaintiff who seeks to avail himself of it, is unfounded. At the time the protest was made, the bank was the holder of the note; "a certified copy *of the protest* and certificate of notice is good evidence of all the matters therein stated." Acts of 1821 and 1827, relative to protests.

2. It is clear that when Judge Waters made the protest, the bank being the holder of the note, he was not prohibited from performing such duties; then the evidence of these acts as performed by him must, in the language of the law, "be good evidence of all the matters therein contained." The judge is not called on to testify in this case, and if he was, he is incompetent to testify against, in favor, or of any thing beyond it; or which strengthens his official acts as declared and set forth in the certificate of protest. 17 La. Rep. 388.

WESTERN DIS.
October, 1841.
───────
WATERS
vs.
PETROVIC
& BLANCHARD.

3. The law of 1827, relative to notaries and notarial protests, is subsequent to the La. Code, and contains no provisions incapacitating notaries on account of relationship.

4. The bill of exceptions taken to the rejection of Reed as a witness, because he is the maker of the note, is not well taken, as he is expressly excluded by the act of 1823. This act must be still in force, unless *expressly* or *impliedly* repealed.

There exists no law expressly repealing it; nor has it been repealed by any new law containing previous contrary to or irreconcilable with this act. Its existence and operation has never until now been doubted. On the contrary it has been expressly recognized on several occasions as being in full force.

5. It is contended that this law is repealed by implication in virtue of the article 3521 of the Louisiana Code repealing all statutes of the State, which have been specially provided for in the Code. We say the case of the rejected witness is not provided for in the Code; and because it declares some incapacities in witnesses to testify, it does not follow that it repealed all others. The question now is, has it been specially provided in the Louisiana Code, that all persons with regard to all contracts are competent witnesses, if they do not come within the exceptions contained in article 2260 of the Code?

6. The contract with regard to which this question arises is one coming under the commercial law; the principles of which were to have been embodied in a commercial code, (art. 2798 of the La. Code); therefore the provisions of the Louisiana Code, do not embrace this subject of the law: or touch the question now under consideration. The act of 1823 must consequently be considered in full force.

7. Finally, it appears that this court as far back as June, 1827, in the case of Flower vs. Griffith, 6 Martin, N S., 90, gave a judicial interpretation to the article 3521 of the Louisiana Code now in question, denying all power to the jurisconsults who drew up the Code to repeal any of the former laws; and it was in consequence of that decision that the legislature

at its next session passed the celebrated *repealing act of* 1828, in which the old code was repealed and all former civil laws; but the 25th section of this act expressly excepts the competency of witnesses; see Session acts of 1828, p. 160; 5 La. Rep., 494.

WESTERN DIS.
*October*, 1841.

WATERS
*vs.*
PETROVIC
& BLANCHARD.

*Boyce & Dunn*, for the defendant and appellant, contended:

1. The defendants and appellants rely on the reversal of the judgment on the ground that the judge *a quo* erred in admitting the act of protest and notary's certificate of the manner of giving notice of protest to the endorsers; said act having been performed by the son of plaintiff, who could not be examined as a witness or give testimony in the case; La. Code, art. 2260.

2. This court has frequently held that a protest is not an authentic act within the meaning of 2231 article of the La. Code; see 16 La. Rep., 563; and that it is not an official act; 15 Idem, 555; and that it is not indispensably necessary that a notary should make a demand of payment of a note and give notice, but that any other person may do it; the mode of proof only being different; 16 Idem, 282. Will the acts of the plaintiff's son then be received as evidence, when he would be wholly incompetent to testify in the case if present?

3. The court erred in not permitting Reed to testify after we had released him, as he then stood indifferent to all the parties and was without interest; this was enabling the plaintiff to commit a fraud on the defendants, which it was the duty of the court to prevent; see 18 Johnson's Rep., 167; Bayley on Bills, 594 to 598.

4. The law or act of 1823, to which the judge *a quo* referred is not considered applicable to this case; and if it is, we conceive it has been repealed by the great repealing act of 25th of March, 1828, and by the adoption of the Civil Code; 13 La. Rep., 198; acts of 1831, page 114. Reed was therefore a competent witness; 8 La. Rep., 120; 13 Idem, 488; 2 Starkie on Evidence, 180, 181 and notes; Bayley on Bills,

WESTERN DIS.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

edition of 1836, 525 to 529, 544, 549; La. Code, arts. 2260, 3521.

5. The cause should be remanded for a new trial, with instructions to the judge *a quo* not to reject Reed's testimony. We would then be able to prove all the matters set up in our answer, and thereby entitled to a judgment in our favor.

*Bullard, J.* delivered the opinion of the court.

This is an action against two of the endorsers of a promissory note by another and subsequent endorser, who alleges, that he took it up after protest.

The defendants admit their signatures, but aver, that about a year previous to the date of the note they endorsed it in blank for the accommodation of the drawers, to enable them to raise one thousand dollars for the use of the steam boat John Linton, of which one of them, T. W. Reed, was then captain. That the note was not dated, nor for any particular sum, but it was well understood, that it should be filled up for one thousand dollars, payable at twelve months. That Reed not having it discounted, and not having use for it, was asked by Waters, the plaintiff, to lend it to him ; that he was hard pushed, and that if Reed would let him have it, he would try and get it discounted in Bank, and at its maturity he would pay it and return it to him. That Reed then told him under what circumstances these respondents endorsed the note, and that he could not use it in that way. But Waters assured him, that if he would let him have the use of the note, he would pay it at maturity, and return it to him. That Reed finally consented to lend him the note, and that Waters then got Reed to fill up the blank for three thousand dollars, but leaving the other spaces in blank ; that Waters kept the note some time, and then had it filled up, making it payable to the order of P. Petrovic, one of the defendants, dated it, and made it payable twenty-four months after date, at the office of the Canal and Banking Company of New Orleans at Alexandria, got it endorsed by James Norment

and J. R. Mead, and had it discounted for his own accommoda-
tion. They aver, that the plaintiff never gave any value for
the note, but that he obtained the same by fraud and false pre-
tences, having a full knowledge of all the circumstances.

WESTERN DIS.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

There was a verdict for the plaintiff, and judgment having
been pronounced thereon, the defendants appealed.

During the progress of the trial, the defendants offered T.
W. Reed, one of the drawers, as a witness, to prove the facts
set forth in their answers, after having tendered a full release
of all his liability, as drawer of the note. He was rejected
as incompetent, and the defendants took their bill of excep-
tions.

The act of the legislature of the 27th of March. 1823, " to
repeal the act which authorizes a special jury in certain cases,
and for other purposes," provides among other things, that in
no case shall the drawer or maker of a promissory note or bill
of exchange be a competent witness in an action brought by
the holder against any of the endorsers, to recover the capital
of such note and legal interest. (See 1 Moreau's Digest, verbo
Jury.) Under this statute we held recently, that the maker or
drawer was absolutely incompetent, notwithstanding a release
of all interest; 18 La. Rep., 470. But the question now pre-
sented for our consideration, to wit : whether that statute is not
repealed by the general repealing clause of the Louisiana Code,
was not raised in that case, nor did it occur to us. If we then
overlooked it, we consider it now our duty to reconsider the
question, and if we have erred, we are ready to retrace our
steps.

The incompetency of the drawer of a bill and maker of a
note, as a witness in any case against an endorser is unequivo-
cally declared by the act of 1823. Has that incompetency
been removed by the provisions of the Louisiana Code? That
is the question.

That part of the Code, which treats of the proof of obliga-
tions and of that of payments, establishes general rules relating
to the cases, in which testimonial proof may be admitted, and

Western Dis.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

under what restrictions, and in what cases it is inadmissible; or in other words, what contracts may or may not be proved by witnesses. It then declares, who shall be considered as a competent witness, when that kind of evidence is admissible. Article 2260 declares, that "the competent witness of any covenant or fact, whatever it may be, in civil cases, is he, who is above the age of 14 years complete, of a sound mind, free or enfranchised, and not one of those whom the law deems infamous. He must besides not be interested neither directly nor indirectly in the cause. The husband cannot be a witness either for or against his wife, nor the wife for or against her husband. Neither can ascendant with respect to their descendants, nor descendants with respect to their ascendants." Such is the general rule of competency, whenever testimonial proof is admissible, and such are the exceptions, to wit: ascendants and descendants, husband and wife, with respect to each other respectively, interest in the cause and infamy. But it is said, the act of 1823 had created another exception, to wit: the maker of a promissory note or drawer of a bill of exchange with respect to the endorser. There is no doubt, if the Code had stopped there, that the exception previously existing would have remained in force, notwithstanding the enactment of the general rule with some enumerated exceptions; because being

*The last article (3521,) of the La. Code, which repeals all laws in every case, provided for in the Code, itself, applies not in every particular instance or cause, but to every category or class of cases, or subject matter upon which the Code contains express provisions and abrogates all previous laws on these subjects.*

in *pari materiâ*, and not repugnant to that article of the Code, containing no expression of exclusion, the act of 1823 might well co-exist with the article of the Code above recited. But the article 3521, containing the "general disposition" or repealing clause, declares, that "from and after the promulgation of this Code, the Spanish, Roman and French laws, which were in force in this State, when Louisiana was ceded to the United States, and the acts of the legislative council of the legislature of the Territory of Orleans, and of the legislature of the State of Louisiana, be, and they are hereby repealed *in every case, for which it has been specially* PROVIDED *in this Code*, and that they shall not be invoked as laws, even under the pretence, that their provisions are not contrary or repugnant

WESTERN DIS.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

to those of this Code." By the words "*every case*," employed in this article, we understand not every particular *instance* or cause; for the Code lays down only general rules; but we take it to mean every *category or class of cases*; or *subject matter upon which the Code contains express provisions.* The competency of witnesses is a distinct subject of legislative enactment. It is expressly and even precisely treated of by the Code, and in laying down the general rule, every *case* in a more narrow sense of the word, is provided for, which may occur in the application of the rule, or which is embraced within it. The Code lays down all the great leading principles of the law of evidence, and treatises upon that branch of the law will be found upon a careful analysis to contain little or nothing more than the developement of those principles in their application to particular cases, as they arise in practice. But the article first recited declares, who shall be a competent witness to prove *any covenant or fact*, whatever it may be, in civil matters; it makes no exception of any particular covenant or fact, whenever parol evidence is admissible under the general provision of the Code. This then is, in our opinion, a case or class of cases specially provided for.

But it is urged, that even the sweeping clause of the act of 1828 (section 25) spared the statute of 1823, and left it in force. That section enacts, " that all the *rules of proceeding*, which existed in this State before the promulgation of the Code of Practice, except those relative to juries, recusation of judges, and other public officers, *and of witnesses, and with respect to the competency of the latter*, be, and they are hereby abrogated, &c., &c."

It appears to us quite clear, that the act of 1828, while it abrogated all the *civil* laws in force before the promulgation of the Louisiana Code, as well as all laws regulating the practice, with certain exceptions, left in force the Louisiana Code itself; and if by that Code the act of 1823, relating to the competency of witnesses, was repealed, it is not perceived, how it could be revived by the act of 1828. The latter act left in force the law

*[margin notes:]* The competency of witnesses is a distinct subject of legislation. It is expressly and precisely treated of by the Code, (article 2260;) and it lays down all the great and leading principles of the law of evidence. The article 2260 declaring who shall be a competent witness to prove any covenant or fact, whatever, in civil matters, makes no exception of any particular covenant or fact whenever parol evidence is admissible under the general provisions of the Code; and the act of 27th March, 1823, so far as it renders the maker of a note, &c. an incompetent witness in an action against the endorser, IS REPEALED by the last and repealing article of the Louisiana Code. The repealing act of 1828, left in force the Louisiana Code, and also the law respecting the competency of witnesses; leav-

WESTERN DIS.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

ing the question still open, whether that competency as relates to makers of notes and drawers of bills, &c., was to be determined by the Code or act of 1823.

The general rules of evidence established by the Louisiana Code must be considered as applicable to all contracts whatever.

then existing, respecting the competency of witnesses, leaving the question still open, whether that competency in the particular case now before us is to be determined by the Code or by the act of 1823.

But it is argued by the counsel for the appellee, that the contract, with regard to which this question arises, comes under the commercial law, and that the principles in relation to that branch of the law were to have been embodied in a distinct Code, to be designated the Commercial Code. That work has never been adopted, nor even prepared for adoption, and although it may have been the intention of the jurisconsults appointed for that purpose, to embody in it the rules of evidence, particularly applicable to commercial contracts, yet until such Code shall have been enacted, the general rules of evidence established by the Louisiana Code, must be considered as applicable to all contracts whatever, except when the Code declares otherwise.

It is further urged, that in the case of Flower vs. Griffith (6 Martin, N. S., 90) this court gave a judicial interpretation to the article 3521 of the Code; denying all power to the jurisconsults, who prepared the amendments of the Code, to repeal any of the former laws.

In the case referred to the court held, that the 27th title of the 3d book of the Code of 1808 was still in force, although not found in the new Code, and no provision had been made on the subject, to wit: the seizure in execution of the undivided share of a co-heir in a succession. It appeared to the court, that it was merely an unintentional omission in printing the new Code, the jurists not having proposed to change the law in that respect, as appeared by their report. The court said, "if any thing has been omitted, that omission does not prevent the law, which had already been promulgated in the old Code, from being in force. To decide otherwise, would be virtually a declaration, that the persons, who were appointed to print the Code, had legislative powers." In that case the Louisiana Code appeared to contain no provision on the subject

.of the seizure of the undivided share of an heir; but in the
case now before us the competency of witnesses is specially
treated of, and there appears to us to be very little analogy
between the two.

WESTERN DIS.
October, 1841.

WATERS
vs.
PETROVIC
& BLANCHARD.

We are further referred to our decision in the case of Jenni-
son vs. Wamack, 5 La. Rep., 493, in which an interpretation
was given of the words *Civil Laws*, as used in the act of 1828.
The court said, that the word *civil* as applied to laws anterior
to the Code, must not be considered as used in contradistinction
to the word *criminal*, but must be restricted as in common par-
lance to the *Roman Law*, and the jurisprudence of those
countries, who derived their jurisprudence from it, and as
distinguished from the English law or that of the other States
of the Union. But we held, that a part of the act of 1808,
relative to the proceedings upon prison-bound bonds was still
in force, notwithstanding the act of 1828 and the Code of
Practice.

This court
has held (in 5,
La. Rep. 493,)
that a part of the
act of 1808, re-
lative to pro-
ceedings upon
prison bonds
was still in for-
ce, notwithstan-
ding the repeal-
ing act of 1828,
and the Code of
Practice.
A notary pu-
blic, who is the
son of one of the
endorsers on a
note, is not
thereby render-
ed incompetent
to make protest
and give notice
to all the par-
ties.

There is a second bill of exceptions to the admission of the
protest and certificate of notice made by the parish judge of
the parish of Rapides, notwithstanding the objection of the de-
fendant's counsel, that he is the son of the plaintiff, and con-
sequently incompetent to furnish evidence either directly or in-
directly, for his father. We are of opinion, the court did not
err. The notary, we think, was not incompetent to make the
protest, although his father was a party to the note. In the
case of Duplantier vs. Dawson, we held that the sheriff was
competent to execute an order of seizure and sale, although
the plaintiff was his mother; and in the case of Segur's Heirs
vs. Segur, that the grand-father of a legatee is a competent
witness to a testament. The court held, the official act might
be valid, and yet the witness or the public officer be incompe-
tent as a witness in any controversy growing out of the act.
14 La. Rep., 28 ; 15 Idem, 289.

A sheriff, who
is the son of the
plaintiff, in ex-
ecution, is ne-
vertheless com-
petent to exe-
cute it.
So the grand-
father of a lega-
tee is a compe-
tent witness to
a Will. The
official act may
be valid, and
yet the public
officer, be in-
competent as a
witness in any
controversy
growing out of
the act.

Being of opinion therefore, that the court erred in rejecting
the maker of the note as a witness, and that the case must go

WESTERN DIS. back as to both the defendants, it is not necessary to enquire
October, 1841. into the sufficiency of the notice of protest.

MAURIN & CO. The judgment of the District Court is therefore avoided
*vs.*
ROUQUER ET AL. and reversed, and the verdict set aside, and it is further
ordered, that the case be remanded for a new trial, with
directions to the judge not to reject the witness Reed, on
the ground of his incompetency as one of the makers of the
note sued on; and that the plaintiff pay the costs of this
appeal.